And we have a motions calendar where all cases are submitted and we'll take care of that later. And we'll turn to the day calendar, the two cases to be heard. And the first is 21-666-IRISH-LL-VIQ-VA, V-I-A. Okay. We'll hear from counsel for the appellant. Good afternoon, your honors. My name is Lindsay Goldbrum and I am counsel for Iris Hillel, the appellant plaintiff here. This case is fairly simple. Plaintiff was fired from her employment because of defamatory statements made by the defendant that were designed to meet that exact end. Defendants have attempted to rewrite both the plaintiff's complaint and the law. Nowhere in the amended complaint has plaintiff alleged the statements made by the defendant was in furtherance of a common interest with her employer, Obvio Health, to which the statements were made. The common interest privilege is designed to be construed extremely narrowly. To construe the privilege on its face, it's supposed to apply to statements only made in furtherance of the common interest, not that relates to the common interest. If the district court's opinion is upheld, any person or company can make any defamatory statement about any third party to any individual that they have a common interest with, regardless of how attenuated that interest is to the statements being made. The lower court has enlarged the common interest privilege here. The issue here has become whether two parties working on a deal insulates every single statement made between those two parties, and it does not. The statements here were not made in furtherance of the deal that Obvio Health and IQVIA were being, that were making together. And the defendant is simply trying to do an end run around a part of that deal that they did not like. To be very clear, these defamatory comments were not made to further any interest common to IQVIA and to Obvio Health. Rather, these defamatory statements were made to further IQVIA's interests, which at the time were in, were diametrically opposed to the interests of Obvio Health. Could you take a moment please and just address two of the comments that, which your complaint rests on, and those are of Mr. Grenfell, that he did not want to, Ms. Hillel, to work with Obvio Health in Europe, and Ms. Spongenthal, excuse me for mispronouncing, that she would not attend any meetings with Obvio Health if Ms. Hillel was going to be present. How are those false statements? Absolutely. So, your Honor didn't mention, of course, the other statement, which was that Ms. Hillel was fired from her employment at IMS Health, which I assume is because that is more of a factual statement on its face. But those statements were actionable defamation because they could be considered as defamatory due to extrinsic circumstances. Well, I'd like to know how they're false. How are they false? If one, if each person is saying that she would, in one case, would not attend the meeting if she was going to be present, and the other said he did not want to work with her. How are those false? Don't you need falseness to sustain a defamation claim? So, your Honor, under New York law, a statement of opinion that's accompanied by a full recitation of the facts are deemed pure opinion, but a statement of opinion that implies a basis of an undisclosed fact is actionable as mixed opinion, which is the case here because the statement here- I'm not saying that this is, excuse me, I'm not saying that this is an opinion. I'm asking how is it a false statement of fact for Mr. Grenfell to have said he did not want Ms. Hillel to work with IQVIA in Europe? So, they're susceptible to a defamatory meeting because it implies that her prior employment was unsavory, unprofessional, and or deficient, which would be false. And it also essentially makes the assumption that a reasonable listener could assume that the statements were based on some sort of undisclosed negative facts concerning her exemplary performance while she was at IMS in Quintillis. Couldn't it also just imply that Mr. Grenfell, you know, and Ms. Hillel had a personality conflict and he didn't want to work with her? So, that's not alleged anywhere in the complaint. And also, you know, based on Ms. Hillel's previously fled interactions with Mr. Grenfell, they were actually exemplary. They were very positive. And so, that's not alleged in the amended complaint and that's not, you know, our allegations regarding why Mr. Grenfell made these statements. What I would also like to point out to the court was a recent decision that came down after the full briefing in this case regarding the affirmative defense argument that this case is not properly decided with the common interest privilege because it's an affirmative defense that can't be decided at the motion to dismiss stage. The case is Rajiv Gandhi versus the New York State Unified Court System. The citation is 2021 Westlaw 440425. It was decided on September 27th, 2021 in the Northern District. And they decided this exact issue, whether or not the common interest privilege applied to defamatory statements at a motion to dismiss stage. And they cited the lower court decision in this case and rule in the exact opposite fashion, disagreeing with the lower court and determining that a defamation case where the defendant is asserting the common interest privilege is not appropriate for a motion to dismiss and that they would reserve. Is your position that it can never be decided on a motion to dismiss? Yes, that a defamation claim based on the common interest privilege can never be decided on a motion to dismiss and that it, frankly, especially in this case where the motive is a question. Why is that so, that it can never be decided? There's no instance in which the face of a complaint can make clear that a communication between one scientist and a colleague about a departed colleague's, the quality of that person's work can't be protected by the common interest privilege. Why is that necessarily so? The common interest privilege is on its face in affirmative defense and the plaintiff has no obligation in the pleadings to plead around every possible affirmative defense as it's being implied here. And we cited several cases to that point and Rajna Gandhi, which is the case that I just referred to, also specifically cites to the case of Damock, which we cited repeatedly on pages four to nine of our reply brief, which explicitly states exactly what Your Honor just asked about, which is that the common interest privilege is not appropriate for a motion to dismiss because the plaintiff cannot be required to plead around all possible affirmative defenses. Well, I understand that that's your position, that it's often not appropriate and cases have held that, but that's different from a rule that says that it is never appropriate from the case. But I understand you're arguing for an absolute rule. And Your Honor, just to add a point there, the common interest privilege is also, you know, we're talking about a motive question, whereas we're saying that the statements were made with one motive and the defendant is saying that the statements were made with an entirely different motive. And so this case is right for discovery to determine what that motive truly was. And then in that instance, we would, you know, potentially have more substance to argue this exact issue on a motion to dismiss. Could you take a minute to discuss the argument that Ms. Hillel was an at-will employee and as such she can't show special damages? So the lower court did not make a decision on special damages, but Ms. Hillel did adequately plead special damages. You agree that she was an at-will employee? Yes. But she was subject to an employment contract that had a specific structure regarding her bonus and her salary, you know, and she had a laid out contract for that purpose. But when ObvioHealth terminated plaintiff's employment, it cited her inability to perform specifically the work related to IQVIA, and she pled details regarding her lost income specifically in the form of her income and her bonus structure. And contrary to defendant's contention, lost income has been found in the courts to be considered special damages. And just quickly, I know I'm out of time, but one more cite to that is Commissioner versus Schleyer, 515 U.S. 323 of the 1995 Supreme Court case. May I just take you back, I mean, to your point that common law or common interest privilege can never be decided on a motion to dismiss? There are any number of New York court cases that hold to the contrary, and this court in Tannerife Sports versus NBC adopted a description of defamation that said that it's a false statement published to a third party without privilege that causes harm. So we viewed it as right as part of the definition of the court. So I'm not sure why you think it's so clear that it can never be decided as a matter of law. Well, even if we were to assume that it can be decided as a matter of law on a motion to dismiss stage, and again, I'm just saying on a motion to dismiss stage, I'm not arguing that it can't be decided as a matter of law in a motion for summary judgment. Right, but there are New York cases that have decided it at the motion to dismiss stage, holding that the common interest privilege protected the defendant's statements. I mean, there are scores of cases like that. So the lower court and IQVIA were not able to cite to a single case that held that at a motion to dismiss stage, the common interest privilege applied specifically to defamation cases. But even if we put that aside, if we were to look at the common interest privilege on a motion to dismiss stage, it's our argument that it was adequately pled. No, that I understand. That I understand. Okay. Thank you. Okay. Mr. Tabor. Thank you, Your Honor, and good afternoon, and may it please the court. My name is Ken Tabor, and with my partner, Maria Galeno, from Pillsbury Winthrop Shaw Pittman LLP, we are here for the Defendant Epilee IQVIA, Inc. And first, I want to thank the court for the accommodation of allowing me to appear remotely. Thank you. I'm going to turn, actually, directly to the issue that was raised during Ms. Goldblum's argument about the rightness of this particular issue for the motion to dismiss stage. There are, in fact, numerous New York cases holding that the common interest privilege is appropriately disposed of at the motion to dismiss stage when, as here, from the face of the complaint, the common interest privilege is clear. And the reason that the courts do that is, as was pointed out by Judge Carney, because they also say that the making of an unprivileged statement is an element of plaintiff's burden in a defamation case, and therefore, you can, and in a case like this should, reach the question of whether that element of plaintiff's burden has been met. And here, it has not. It has not. Let me ask you how clear it is on these pleadings, at least with respect to the Thar Mortonam statement. At that point, the interest of the IQVIA would be that they didn't want Hillel involved in helping them negotiate competitive agreements so that they could maintain their competitive advantage over the company and over Obvio. So I'm not sure that it's a common interest in seeing the joint agreement reached. It's rather preserving their ability to compete with one another. Well, Your Honor, there are actually two things. Or get an advantage in competing with one another. Understood. I mean, we have to view this in the light most favorable to the plaintiff at this point. You absolutely do. And let me say that there are, in fact, two things going on here simultaneously. There is both the competitive period for six months, which was permitted under the party's agreements. Your Honor is quite correct about that. But at the same time that those rights were contemplated for a transitional period, there was also the underlying determination that these two companies were entering into what Ms. Hillel's own counsel admitted in oral argument before Judge Presta was a partnership with one another. And that partnership is actually described at some length in the complaint. The complaint refers at paragraph 32 to IQVIA's $8 million investment in Obvio, which was part of those discussions. It also refers in that same paragraph to a $47 million commercial commitment that was being made to Obvio. It refers at page 104 to a large deal, I'm sorry, paragraph 104 to a large deal, at paragraph 139 to a significant collaboration. And it was all in that context that these conversations revolved around the suitability of the plaintiff, as Judge Presta put it, the fitness of the plaintiff to work on this at stake. So you might ask, well, how do we reconcile the fact that there are these two simultaneous interests in play? And the answer is that as Judge Presta pointed out and has been established in numerous cases, the interests of the parties need not be identical for there to be a common interest privilege applicable. As long as there is a corresponding interest between the parties, that is sufficient to trigger the common interest privilege. And numerous cases have said that. Most notably, Your Honors, the Yang-Ki Han case out of the Eastern District in 2013 makes it clear that there need not be a complete identity of interest in order for the privilege to be triggered. And indeed, it is possible, that case observed, that there be a situation in which some of their interests are diametrically opposed to one another. Mr. Tabor, your friend on the other side says that even if a common interest privilege applies and it is appropriate to apply it in this circumstance, the statements have to have been made in furtherance of that interest. And if there are two competing kinds of interests here that you and Judge Radji have been describing, one with regard to the partnership and the other with regard to the competitive action, how will we understand that? Or do you reject the proposition that it has to be in furtherance of a common interest? I reject it, Your Honor, and I reject it for the same reason that Judge Presta rejected it when it was argued below. And that is that there has never been a case, not a single case, dealing with common interest which has applied an in furtherance requirement for the privilege to apply. To the contrary, all that need be is that the privilege is triggered by the context, by the common interest context that is taking place. The other side cites a single case for their in furtherance obligation. It's a case called Allied Irish Bank, and in fact, that case has nothing to do with this common interest privilege in the defamation context. It's about the discovery context in which I as a lawyer may be sharing confidential documents, co-counsel for another party, and we look at whether there's a sufficient common interest and whether the sharing of those documents is in furtherance of that common interest. That's not a defamation case. It has nothing to do with what we're looking at. And that standard doesn't apply. Could you turn to the special damages question for a minute? It seems pretty clear that Ms. Lell has alleged that she lost her position, which may have been an at-will position, but nonetheless, she had a contract, she had been hired after expensive negotiations, she was known to the company, and she had income and bonuses and a reasonable expectation of that. Does the presence of an at-will component under New York law really defeat the notion that she suffered damages of a sufficient kind to support her claim? The short answer to that is yes, Your Honor. And we don't have to go any further than either the Metcalf case decided by the Southern District in 2013 involving a law firm secretary who was likewise an at-will employee who tried to claim special damages from the termination of her employment and failed. Or in the state courts, the Peter Eppolino case out of the Second Department in 2009. That case says the same thing. If you're an at-will employee, you can't have special damages from the termination of that at-will relationship. I should note that that particular piece, Your Honor, only becomes relevant to one of the causes of action, which is the cause of action here for definition for Quad. I want to go back to another point. My concern to take you back to the question of the common interest is that at paragraphs 129 through 132, and this is at page A85 of the record, what the plaintiff pleads is that these representations came shortly prior to the closing of the investment deal. Ms. Hillel was in the process of bringing in significant business to Obvio Health that was competitive to the business of ITVIA. And then at 132, as a result of their knowledge that Ms. Hillel had the capability to execute a number of these deals in the provided timeframe, that's the six-month timeframe, which they wanted to prevent, these actions are in direct contrast to the business interests of Obvio. So the pleading here is that the statements were made to interfere with the, or to secure a competitive advantage, not to further the common interest in the partnership. That's where I'm having trouble seeing this decided at the dismissal stage. What do you want me to understand that I'm missing here? Your Honor, I think that goes back to the point I made earlier, which is there can be multiple interests at play, as long as one of them is the interest that the parties hold in common. What should that be at the dismissal stage? I mean, this could go to a fact finder, and the fact finder would be asked whether the statement was made to minimize the ability to compete. And then it would be decided whether it was common interest or not. The answer, Your Honor, is we don't need a fact finding on that, because the existence at the time of the comments of the common interest in getting this tens of millions of dollars deal done. Once it's agreed that that is in play at the time, if the comments are made at that time in that context when there is a, quote, corresponding interest, that's what triggers the common interest privilege. Even if, floating around that, there are other issues that the parties have contrary interests in. And the reason for that as a policy matter is actually quite important. You want to, under First Amendment law, create a wide berth for parties that are engaged in a common enterprise to be able to speak candidly to one another about things like who is going to execute the deal? Who's going to be fit for the deal? That was one of the issues, and it's undisputed here, Your Honor, I should say that in the After these statements, he was specifically asked to nominate another person in the company to work with IQVIA. In her opening appellate brief at page nine, the plaintiff says, quote, as a result of these statements, she was removed from all communications related to IQVIA in the wake of its significant collaboration with Obvio Health slash Sprint. We don't have to go any further than the plaintiff's own statements to know that these statements had the direct impact at the time of influencing her inability to continue to participate on the transaction. What about the specific factual statement, which she says was just simply false, that she was fired from, is it ITS, IMS? IMS, the predecessor. She alleges that that is just flat out false. Correct. And that would be, I think, a defamatory statement insofar as it reflected poorly on her professional capabilities. Why would that be covered by the common interest privilege at this stage of the pleadings? Why wouldn't she have an opportunity to show that that was made with malice to overcome any possible coverage, since she says that there's a flatly false statement, knowingly. Right. So for purposes of this motion, we have to accept her allegation that it was flatly false. And that means that she has to prove either common law malice or actual malice. And the complaint here does neither, doesn't allege either with any supporting facts. It is not enough to say, Judge Preska correctly pointed out, that this individual who made the statement was a senior executive in the company. He worked halfway around the world from her. She was in Israel. He was in Singapore. There would have to be allegations that he had actual knowledge of falsity in order to get you over the actual malice hurdle. So why isn't the seniority of his position and the nature of the statement such that combined, it would be reasonable to infer that it was a knowing misstatement, that at least it gets her past at this stage, particularly where we have this concern about whether it's appropriate to adjudicate a common interest privilege on a motion to dismiss. So she has to allege, in order to get past the motion to dismiss stage, facts. Facts that, not surmise, not conjecture, not speculation. Those are all three words that come out of the Fuji photo case that say you cannot allow surmise, speculation, or conjecture in order to have an allegation of malice that passes muster. What you must do, if for example, let's suppose that the speaker was her boss and he knew the circumstances of her departure. That would allow you to say, based on these facts, he actually knew that she wasn't fired. But that's not the allegation here. Indeed, it can't be the allegation here because the individual in question is 5,000 miles away. She's not his direct report. They're not close to one another in any way, shape, or form within the organization. And so that's... These days, mileage doesn't mean very much, does it? Well, that would be an argument, but those days was pre-pandemic. Mileage meant something in the olden days. Not so old, I might say. But the fact of the matter is you can't get to actual malice, nor can you get to common law malice, when you have all these other alternate motivations in play. And if I might just go to one last issue that you raised, Judge Carney, I know I'm over time, but you asked about the absence of a falsity component as regards to those other two statements. The statements essentially that said, I don't want to work with you, I don't want to meet with you. And I think you're absolutely correct about those. There's nothing false about that. It's not a defamatory statement to say I don't want to work with somebody. There could be a hundred reasons why you don't want to work with somebody, including that you think they're just not a very nice person, or you've had some kind of unhappy altercation with them before. None of that would be defamatory. None of them makes the statement, I don't want to work with her, a defamatory false statement. We think it's an opinion, but you don't actually have to even get to the question of whether it's an opinion if you can't get past the falsity prong, as you quite correctly pointed out. Thank you. Thank you. Thanks very much. All right. We'll hear from Appellant's counsel. Thank you, Your Honors. I first want to address something we were discussing prior to the closing of my arguments. You know, there is a possibility where it may be proper to decide the common interest privilege motion on a motion to dismiss, but in very, very limited circumstances. And the only circumstance in which we can surmise that would be appropriate would be if there is a statement that there is a common interest between the parties within the pleadings. You know, even if a common interest privilege statement is not necessary to be in furtherance of that common interest, which we still, you know, hold steadfast that it is, it still needs to be in the direction of that interest, which was pointed out by Your Honors. There are not multiple interests at play here. The one interest here which matters is why the statement was made, and there was a claim that it had been diametrically opposed to the interests of Obvio Health. While we concede that a deal was happening, all of that is completely irrelevant to the motive that was pled here, which was that that was opposing to Obvio Health. It was these significant deals that were worth quite a lot to Obvio Health that would have been adverse to the interests of IQVIA who wanted to maybe provide that source themselves. There were absolutely no common interests here that were even relatively related to the statements that were being made by IQVIA. To the point of special damages, losing your job should, I mean, the idea that losing your job should not be counting as special damages would be entirely contrary to the purpose of these defamation statutes. The courts often hold that an inability to become subsequently employed is special damages, so to not apply it to the converse would, again, be contrary to the purpose of these statutes. I also want to point to Allied Irish Banks, which is a case that defendants referenced in their arguments as to why is it applicable as far as the in furtherance argument. If you look at the actual text of the case, it says, as is true for any privilege, the common interest rule is narrowly construed. So excuse me just a second. So I did look at Allied Irish Bank, and it seems to be quite distinguishable here. This is a work product, attorney work product claim in the context of a discovery dispute. And while there's some general language about privilege, it really is addressing a common interest rule in terms of third-party discovery obligations. I really don't see what's applicable here. Can you help me understand why I'm wrong in reading it too narrowly? Of course, Your Honor. Even if we were to separate out a rule versus a privilege, if we look at the purpose of these two things, which is to determine whether or not there's a common interest sufficient to protect statements made by parties, it's essentially a construction. But wouldn't you agree that a production obligation in the context of a discovery dispute is different from an interest asserted in the context of a defamation case? Yes, but the construction of the rule itself serves the same purpose here. And so that's why we think it should be applicable also to the issues of defamation that are at play here with the common interest privilege. Thank you. Thank you. Thanks very much. We'll reserve the decision.